IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-553-BO-KS

| | | |
|---|---|---|
| THERESA SCHMITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| WAKE COUNTY BOARD OF | ) | |
| EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on defendants' motion to dismiss and plaintiff's motion for preliminary injunction. [DE 22]; [DE 5]. The appropriate responses and replies have been filed, or the time for doing so has expired, and both motions are ripe for disposition. For the reasons that follow, defendants' motion to dismiss is granted and plaintiff's motion for preliminary injunction is denied.

BACKGROUND

Plaintiff, who proceeds in this action *pro se*, filed a complaint against the Wake County Board of Education and individual employees of the Wake County Public School System alleging claims under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act (Section 504), and for violation of her rights under the First Amendment pursuant to 42 U.S.C. § 1983. [DE 1]. Plaintiff alleges that she is both an employee of the Wake County Public School System (WCPSS) and the parent of a child with a disability who previously received special education services through WCPSS. During the relevant time periods, defendant Darrell Propst was the Principal of Swift Creek Elementary School, where plaintiff is employed as a classroom

teacher. Defendant Jonathan Enns was the Regional Superintendent for WCPSS and defendants Tanisha McCoy, Jerry Griffin, and Carla Winthrow were in Employee Relations positions at WCPSS.

Plaintiff alleges that, as both a parent and a teacher, she advocated for compliance with federal education and civil rights laws and that WCPSS retaliated against her for doing so. She alleges that she was reassigned to a less favorable position, that she was excluded from IEP meetings for which she was teacher of record, that her requested accommodations were refused, and that she was subjected to a hostile work environment. *Id.* ¶ 12-13; 16-17. Plaintiff specifically identifies complaints she raised both internally and externally, including an ADA/504 retaliation complaint in September 2024 which plaintiff contends was not handled properly and resulted in plaintiff's reassignment, an ADA/504 complaint in May 2025 which resulted in plaintiff, herself, being investigated, and a formal ethics complaint to the Wake County Board of Education in July 2025 in which plaintiff documented Propst's retaliatory conduct against plaintiff. *Id.* ¶¶ 20-25.

In August 2025, plaintiff requested an ADA/504 accommodation in the form of leave, but was told that WCPSS did not offer that type of leave. Plaintiff alleged that she submitted documentation supporting her request and need for temporary leave due to the hostile work environment, but WCPSS did not engage in an interactive process with her or provide her with her requested accommodation. *Id.* ¶¶ 26-27. Plaintiff alleges that, due to defendants' retaliatory conduct, she has experienced significant emotional distress and health-related harm which has been documented by her medical providers. *Id.* ¶ 28.

Defendants have moved to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

2

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.[1]

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[1] Although defendants have cited to Rule 12(b)(1) in their motion to dismiss, the Court has not identified any argument therein that the Court lacks subject matter jurisdiction. The Court thus considers defendants' motion under Rule 12(b)(6).

3

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation and citation omitted). However, a court does not "act as an advocate for a pro se litigant." *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978), nor is it required to "'discern the unexpressed intent of the plaintiff[.]'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted).

## A. Section 1983 claims

Plaintiff brings a claim under 42 U.S.C. § 1983 for liability against the Wake County Board of Education under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–94 (1978). Under *Monell*, a local government can be held liable under 42 U.S.C. § 1983 for its unconstitutional policies. A school board may also be held liable for its unconstitutional policies under *Monell. See Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 522 n.3 (4th Cir. 2000). Liability is limited, however, and is not available against a municipality or schoolboard merely for employing a tortfeasor. *Id.* at 522. Liability under *Monell* results only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . .." *Monell*, 436 U.S. at 694.

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is 'so persistent and widespread' as to constitute a 'custom or usage with the force of law.'

4

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotations omitted).

Plaintiff alleges that the WCPSS "maintained a policy, practice, and custom of ignoring ADA/504 complaints, misclassifying them as personnel issues, and shielding retaliatory actors while punishing those who engaged in protected activity." [DE 1] ¶ 32. Plaintiff further alleges that the Board of Education had notice of plaintiff's constitutional claims and that it failed to act, constituting deliberate indifference and ratification. *Id.* ¶ 34. Plaintiff's allegations of a policy, practice, and custom of ignoring ADA and Section 504 complaints are conclusory. *See also Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) ("The challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights."). Her supporting allegations further concern conduct directed only at her, and she has failed to plausibly allege the existence of any "relevant incident prior to her own case of which the [Board of Education] could have had knowledge and in which it acquiesced[,]" thus supporting the existence of a permanent and widespread practice which could demonstrate a custom. *Id.* at 220; *see also Barrett v. Bd. of Educ. of Johnston Cnty., N.C.*, 590 F. App'x 208, 210 (4th Cir. 2014). Nor do plaintiff's allegations plausibly support deliberate indifference by the Board of Education, which "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation and citation omitted). As to her claim for ratification by the Board of Education, plaintiff has failed to allege any specific action by the Board which would show that it made its own decision to uphold an unconstitutional practice of its subordinates. *See Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022) ("Ratification liability does not hold a municipality liable for the actions of subordinate officials; rather, it holds the municipality liable for its own decision to uphold the actions of subordinates."). Plaintiff has alleged that she notified the Board of Education through a

5

formal written ethics complaint which documented defendant Propst's retaliation against her and that the Board of Education failed to take any corrective action. This is insufficient to support a claim under the theory of ratification liability, as she has failed to point to any action by the Board of Education to uphold Propst's conduct. *See Gray v. Charlotte Secondary Sch. Inc.*, No. 3:23-CV-347-RJC-DCK, 2024 WL 2789488, at *4 (W.D.N.C. Mar. 29, 2024), report and recommendation adopted, No. 3:23-CV-00347-RJC-DCK, 2024 WL 2787813 (W.D.N.C. May 30, 2024) (allegation that school board had authorized termination and was in constant contact with principal who terminated plaintiff's employment sufficient at early stage of case to allege ratification liability). Moreover, "[f]ailing to punish a completed (alleged) constitutional violation does not give rise to municipal liability under a ratification theory for the related reason that 'post-facto approval ... cannot possibly have caused the constitutional violation.'" *Fox v. City of Greenville*, No. 4:23-CV-00133-M, 2024 WL 3093583, at *7 (E.D.N.C. June 21, 2024) (quoting *Franklin v. City of Charlotte*, 64 F.4th 519, 537 (4th Cir. 2023)). Plaintiff has failed to state a claim against the Board of Education under *Monell*, and this claim is dismissed.

Plaintiff has also alleged claims against defendants for violation of her First Amendment rights by retaliating against her. Plaintiff has alleged this claim against WCPSS and defendants Propst, Enns, McCoy, Griffith, and Winthrow, each of whom have been named in both their individual and official capacities.

Plaintiff's First Amendment retaliation claim against the individual defendants in their official capacities is another way of pleading her claim against the Board of Education itself, and is thus duplicative. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citation omitted)). As discussed above, plaintiff has not identified any policy,

6

custom, or practice of the Board of Education which resulted in any constitutional injury. Plaintiff's First Amendment claim against the individual defendants in their official capacities is dismissed.

Plaintiff has also alleged her First Amendment retaliation claim against the individual defendants in their individual capacities, and they have raised the defense of qualified immunity. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"As a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (cleaned up). To establish a First Amendment retaliation claim under § 1983, a plaintiff must demonstrate that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (cleaned up).[2]

---

[2] While a plaintiff does not need establish a prima facie case of a discrimination claim to survive a motion to dismiss, she must nonetheless "allege facts to satisfy the elements of a cause of action[.]"

Plaintiff has alleged that she engaged in speech and advocacy for the rights of students with disabilities and compliance with federal laws, which plaintiff has plausibly alleged are matters of public concern. Plaintiff further alleges that, as a result of her advocacy, she was excluded from IEP meetings, reassigned, subjected to hostile conduct, and denied reasonable accommodations. Even assuming, without deciding, that plaintiff engaged in protected speech and suffered adverse action, her complaint fails to plausibly allege any causal relationship between her protected expression and adverse action. To establish the causation element, "it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the employer would not have taken the alleged retaliatory action." *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1140 (4th Cir. 1990). Plaintiff alleges that after she raised concerns about IEP inconsistencies, colleagues filed retaliatory complaints against her, and defendant Propst responded by investigating plaintiff. Plaintiff has not alleged, however, that defendant Propst, or any other defendant, had any knowledge of her alleged protected expression when he or they took any action against her. As plaintiff has failed to plausibly allege a violation of her First Amendment rights, the individual defendants in their individual capacities are entitled to qualified immunity. Alternatively, plaintiff has failed to state a plausible First Amendment claim against these defendants.

**B. ADA/Section 504 claims**

Plaintiff alleges a claim for failure to accommodate in violation of the ADA and Section 504. "To the extent possible, [courts] construe the ADA and Rehabilitation Act to impose similar requirements." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). To

---

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015), and "reference to the elements of a [] claim is helpful to gauge the sufficiency of the allegations." *Gaines v. Balt. Police Dep't*, 657 F.Supp.3d 708, 734 (D. Md. 2023).

8

state a claim for failure to accommodate in violation of the ADA, a plaintiff must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir 2013) (cleaned up, citation omitted).

Plaintiff has failed to allege that she is an individual with a disability within the meaning of the statute. Plaintiff alleges that after she was denied accommodations in retaliation for her protected activities she suffered from physical and mental health conditions. But those conditions, which developed after she requested accommodations, cannot serve to form the basis of her disability which would entitle her to accommodation in the first place. Plaintiff also alleges that she requested paid administrative leave as a reasonable accommodation. Under the ADA, a reasonable accommodation can include "'permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment[.]'" *Id.* at 345 (quoting 29 C.F.R. § 1630.2(*o*) (Appendix) (2011)). "[A] leave request will not be unreasonable on its face so long as it (1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question." *Id.* n.7. Here, plaintiff has not alleged that her requested accommodation consisted of accrued paid leave, that it would be for a limited, finite period, or that by accommodating her request plaintiff would have been likely to perform the essential functions of her job. Plaintiff has thus failed to plausibly allege a claim for failure to accommodate.

Finally, plaintiff has failed to plausibly allege a claim for retaliation in violation of the ADA or Section 504. A plaintiff establishes a prima facie case of retaliation under either statute "by showing (1) that he engaged in protected activity, (2) that the [defendant] took an adverse

9

action against him, and (3) that the adverse action was causally connected to his protected activity." *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78, 78 n.6 (4th Cir. 2016). "An alleged retaliatory action must be 'materially adverse,' meaning that the plaintiff must show that the action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (citation omitted).

Plaintiff alleges that she engaged in protected activity by advocating for students with disabilities and filing ADA/504 complaints. She further alleges that she was retaliated against by being reassigned, excluded from IEP meetings, forced to tolerate hostile conduct by a co-worker, and being denied requested accommodations. Plaintiff also alleges that defendants refused to participate in OCR-offered mediation of her retaliation complaint, compounding the adverse treatment she received. First, plaintiff has failed to plausibly allege that she suffered adverse action. While reassignment can constitute adverse action, plaintiff offers no factual allegations which would plausibly support that "the transfer brought about some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354 (2024). Plaintiff's characterization of the transfer as being to a less favorable position, without more, is insufficient, even at this early stage, to plausibly support her claim that she suffered adverse action. Plaintiff's complaint further fails to plausibly allege that any of the other alleged adverse actions she has identified would have dissuaded a reasonable employee from engaging in protected conduct.

Moreover, plaintiff has failed to plausibly allege a causal connection between any protected activity and adverse action. In order to establish causation, a plaintiff must ultimately show that the employer knew of plaintiff's protected activity before taking adverse action against her. *See*

10

*Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("an employer cannot take action because of a factor of which it is unaware [and] the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). Plaintiff alleges that she advocated for students with disabilities, but she does not allege that Propst or any of the other defendants knew of her advocacy prior to taking any alleged retaliatory actions. In sum, plaintiff's claim for retaliation is conclusory, and she has failed to plausibly allege a claim for relief.

Plaintiff's arguments in opposition to the motion to dismiss do not lead to a different result. In her opposition, plaintiff at times seeks to add factual support to her claims, but a plaintiff may not amend her complaint through her opposition to a motion to dismiss. *See Neal v. Sandhills Ctr.*, 737 F. Supp. 3d 291, 296 (M.D.N.C. 2024). The Court also notes that plaintiff has filed a number of supplemental documents and exhibits since the filing of her complaint. [DE 17]; [DE 18]; [DE 19]; [DE 28]; [DE 30]. Though plaintiff proceeds *pro se*, the Court is not tasked with "combing through the record" to find support for her claims. *Howell v. Upgrade, Inc.*, No. 6:24-CV-04228-JDA-WSB, 2024 WL 5683321, at *1 (D.S.C. Dec. 6, 2024). Plaintiff mistakenly argues in her opposition that defendants have not moved to dismiss her *Monell* claim and otherwise generally recites the elements of her causes of action without persuasively arguing that the allegations in her complaint have nudged her claims across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 570.

Accordingly, defendants' motion to dismiss plaintiff's complaint is granted. As plaintiff cannot therefore show that she is likely to succeed on the merits of any of her claims, her motion for preliminary injunction is denied. *See Winter v. Nat'l Resource Def. Council*, 555 U.S. 7, 20 (2008).

11

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [DE 22] is GRANTED. Plaintiff's

claims against defendants are DISMISSED with prejudice for failure to state a claim upon which

relief can be granted. Plaintiff's motion for preliminary injunction [DE 5] is DENIED.

The Clerk is DIRECTED to enter judgment and close the case.

SO ORDERED, this _13_ day of April 2026.


TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

12